UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. _____ - Civ _____**

**DOMINIC HOWARD**
and **KAREN HAAS,**

     Plaintiffs,

vs.

**AIA HOLDINGS, INC., a Florida foreign corporation,**
**ALLEGHENY CASUALTY CO., a Florida foreign**
**corporation, INTERNATIONAL FIDELITY**
**INSURANCE CO., a Florida foreign corporation,**
**BANKERS INSURANCE CO., a Florida corporation,**
**BANKERS INSURANCE GROUP, INC., a Florida corporation,**
**BANKERS SURETY SERVICES, INC., a Florida corporation,**
**NATHAN FOLTZ, individually and d/b/a SOUTH SHORE**
**BAIL BONDS, CHARLES HOLLAND, individually,**
**CHARLES HOLLAND, INC., a California corporation, d/b/a**
**GOLD COUNTRY BAIL BONDS and CHI MONITORING,**
**MICHAEL WHALEN, individually, and**
**SULEIMAN HABIB YOUSEF, individually.**

     Defendants.

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiffs, Dominic Howard (Howard), by and through undersigned counsel, and Karen

Haas (Haas), in proper person, sue Defendants AIA Holdings, Inc., a Florida foreign corporation

(AIA); Allegheny Casualty Co. (Allegheny), a Florida foreign corporation; International Fidelity

Insurance Company (Fidelity), a Florida foreign corporation; Bankers Insurance Company

(Bankers), a Florida corporation; Bankers Insurance Group, Inc.(BIG), a Florida corporation;

Bankers Surety Services, Inc. (BSSI), a Florida corporation; Nathan Foltz (Foltz), individually

and d/b/a South Shore Bail Bonds; Charles Holland (Holland), individually; Charles Holland,

Inc. (Holland, Inc. or CHI Monitoring), a California corporation, d/b/a Gold Country Bail Bonds

and CHI Monitoring (CHI); Michael Whalen (Whalen), individually; and Suleiman Habib

Yousef (Yousef); individually, and allege as follows:

## INTRODUCTION

1. This action for damages, costs, and attorney's fees is brought pursuant to 18 U.S.C.

§§ 1961-68 against a number of defendants who engaged in a pattern of racketeering activity and

collection of unlawful debt. Defendants include without limitation, persons (bail industry

participants) who conspired to defraud Plaintiffs and others by preparing false documents and

forged bail bonds. By illegally retaining or extorting bail premiums, all acted in concert to make

their cut of the bail bond premiums. Plaintiff was objectively and lawfully at his mother's

residence in Miami, Florida on Thanksgiving weekend when the documents show Defendants

claimed Plaintiff was bailed out of jail in California, and that Plaintiffs had supposedly paid for

that. Defendants demanded payment and interest on this forged bail contract. The end result was

multiple threats and actual violent armed episodes against Plaintiffs and others.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this action under the Racketeer Influenced and Corrupt

Organizations Act, 18 U.S.C. § 1964(c), and 28 U.S.C. § 1331, and applicable principles of

supplemental jurisdiction under 28 U.S.C. § 1367(a).

3. Venue is proper under 28 U.S.C. § 1391(b)(1),(2), and (d) and 18 U.S.C. § 1965.

Defendants Bankers, BIG and BSSI are Florida corporations, and Defendant Yousef, resides in

the Southern District of Florida, and a substantial part of the events and omissions giving rise to

Plaintiffs' claims occurred in this District.

## PARTIES

4. At all times material hereto, Plaintiffs, Dominic Howard (Howard) and Karen Haas (Haas), were and are residents of Miami, Miami-Dade County, Florida, who sustained injuries to their business and property by reason of Defendants' unlawful behavior. Plaintiff, Haas, is an AV-ranked attorney with an appellate and trial practice, and former Miami-Dade prosecutor.

5. AIA Holdings, Inc. (AIA) was and is a Delaware corporation made up of Defendants Allegheny and Fidelity, and a third company, Associated Bond. AIA is self-described as the nation's "oldest and largest family of bail bond insurance companies." AIA has its principal place of business in Calabasas, California. Under a Managing General Agent agreement between AIA and Fidelity, AIA engages in all bail bonds marketing and underwriting on behalf of the Allegheny, Fidelity, and the Associated Bond consortium.

6. At all times material hereto, Allegheny (Allegheny) was and is a New Jersey licensed insurance corporation, registered and qualified to do business in the State of California and the State of Florida. Allegheny is a subsidiary of International Fidelity Insurance Company.

7. Defendant International Fidelity Insurance Company (Fidelity) was and is a New Jersey corporation, with its principal place of business in California, registered and qualified to do business in the State of California and the State of Florida.

8. At all times material hereto, Bankers Insurance Company (Bankers), was and is a Florida corporation, organized and existing under the laws of the State of Florida, qualified to do business in the State of California and the State of Florida, with its principal place of business in St. Petersburg, Florida.

3

9. At all times material hereto, Bankers Insurance Group (BIG), was and is a Florida corporation, organized and existing under the laws of the State of Florida, qualified to do business in the State of California and the State of Florida, with its principal place of business in St. Petersburg, Florida. It is a subsidiary of Bankers Financial Corporation and the corporate parent of their insurance companies.

10. At all times material hereto, Bankers Surety Services, Inc. (BSSI), was and is a Florida corporation, organized and existing under the laws of the State of Florida, qualified to do business in the State of California and the State of Florida, with its principal place of business in St. Petersburg, Florida. It is a managing general surety agent for Bankers Insurance Company (Bankers), and Michael Whalen (Whalen) was its Executive Vice-President.

11. At all material times hereto, Defendant Nathan Foltz (Foltz), was a non-resident of the State of Florida, residing in the State of California, owner and d/b/a South Shore Bail Bonds, and Agency Bail Bonds of Tahoe. He is an employee/agent of Holland/Holland, Inc. and has power of attorney as a subproducer to act as agent of Defendants Bankers, BIG , BSSI, AIA, Allegheny, and Fidelity. He is a California bail bond agent, License # 1841566. Foltz was an authorized agent named and appointed to transact on behalf of Bankers, BIG and BSSI as of May 4, 2014 and at least until February, 2017. Alternatively, Foltz's employer effective February 9, 1999 is Holland, and Foltz is authorized to transact on behalf of Holland, Inc. effective December 13, 2007. Thus at all material times, Foltz is an authorized agent on behalf of Bankers. Foltz also is and was an authorized agent named and appointed to transact on behalf of AIA, Allegheny, and Fidelity effective August 8, 2015.

12. At all times material hereto, Defendant Charles Holland (Holland), was a non-resident

4

of the State of Florida, residing in the State of California, and employer/principal of Defendants

Foltz and Yousef; and has power of attorney as a producer to act as agent for Defendants

Bankers, BIG, BSSI, and Defendants, AIA, Allegheny, and Fidelity. Holland is an experienced

bail bondsman in the Lake Tahoe/Placerville area. He is a California bail bond agent, License

#1841111. Holland is and was an authorized agent named and appointed to transact on behalf of

Bankers, BIG and BSSI effective April 13, 1998. Holland also is and was an authorized agent

named and appointed to transact on behalf of AIA, Allegheny and Fidelity effective July 27,

2015.

13. At all times material hereto, Charles Holland Inc. (Holland, Inc.), was and is a

California corporation, organized and existing under the laws of the California, qualified to do

business in the State of California and doing business as Charles Holland Bail Bonds, Aaronic

Bail Bonds, Gold Country Bail Bonds, Hangtown Bail Bonds, Absolve Bail Bonds, and North

State Bail Bonds, and is employer/principal of Defendants Foltz andYousef, with power of

attorney as a producer to act as agent for Defendants Bankers, BIG and BSSI, and Defendants

AIA, Allegheny and Fidelity. Holland, Inc. has a California bail bond agent license #1844429,

which lists five (5) bail agent employees. Holland, Inc. is and was an authorized agent named and

appointed to transact on behalf of Bankers, BIG and BSSI effective December 13, 2007; and is

and was an authorized agent to transact on behalf of AIA, Allegheny and Fidelity effective July

27, 2015. Further, Charles Holland, Inc. also does business as "CHI Monitoring" providing

probation services of electronic monitoring for out-of-county residents for the El Dorado County

Probation Department, and as such will be referred to as "CHI."

14. At all times material hereto, Defendant Michael Whalen (Whalen), was and is Vice-

5

President of Defendants AIA, Allegheny and Fidelity since 2011; and formerly Executive Vice-

President of BSSI, and supervises Foltz, Holland/Holland, Inc. at AIA, and previously

supervised them at BSSI. When Whalen left Bankers for AIA, Allegheny, and Fidelity in 2011,

Foltz, Holland, and Holland, Inc. followed him to AIA, Allegheny, and Fidelity, in July and

August of 2015. Whalen is an officer or director at the executive level for AIA. Whalen currently

works and resides in Naples, Florida.

15. At all times material hereto, Defendant Suleiman Habib Yousef (Yousef), was and is

a resident of Miami, Miami-Dade County, Florida, and employee/agent of Defendants Foltz,

Holland, and Holland, Inc., and agent of AIA, Allegheny, and Fidelity. Yet, according to the laws

of California and Florida, at no point was Yousef lawfully allowed to take any actions on a bail

bond contract for any of the defendants.

## FACTS

### How bail bonds are supposed to work

16. Bail agents are sales agents of the sureties. Sureties are supposed to provide bail

contracts that conform to state law, and producer contracts for their bail agents that reflect a bail

bond is an insurance contract by the sureties.

17. On May 4, 2014 Howard was arrested on a victimless misdemeanor in California.

Plaintiffs negotiated the terms of the bail contract, agreeing to pay a one-time payment of $ 200

total premium for a $ 2,500 bail bond. Bankers/BIG bailed out Howard on that date through its

bail sale agent Foltz using their power of attorney. (See, Bankers/BIG's Bail Bond Contract

attached hereto as "Ex. A"). During the discovery phase, Howard believed a jury was entitled to

see the police videos of Howard's alleged misdemeanor, and took an interlocutory appeal. It was

over a year before oral argument. Bankers/BIG, through Foltz, communicated it was displeased with this delay, and demanded additional premium.

18. If Bankers/BIG/BSSI was displeased with the terms of the contract, they had every opportunity, including after oral argument November 5, 2015, to simply walk Howard from the courtroom to the jail. Haas would have posted a cash bail through the clerk during business hours, and that would have lawfully ended Defendants' bail bond contract and liability to the court. However, California and common law provides that when the surety returns the bailee prematurely, without fulfilling the terms of the bail contract, the bailee is entitled to a return of any premium paid. But that was unacceptable to the RICO scheme of obtaining maximum illegal premiums.

**How it did work**

19. The sureties provide bail bond contracts for the bailees that fail to conform to state law, and producer contracts with the bail bond agents that because they require the agents to bear all risk of financial loss, incentivizes them to hire illegal outside agents. See, AIA contracts attached hereto as "Ex. B" and "Ex. C."

20. Defendants AIA, Allegheny, Fidelity, Bankers, BIG and BSSI created the environment that bred these acts by providing Foltz, Holland, and Holland, Inc. with form bail bond contracts that authorized this conduct, and AIA, Allegheny, Fidelity, Bankers, BIG and BSSI require the bail sales agents, Foltz, Holland, and Holland, Inc. to bear the financial risk of forfeiture.

**Defendants Bankers, BIG, BSSI, Foltz, Holland, and Holland, Inc.**

21. Prior to oral argument November 5, 2015,  Foltz in California telephoned Haas, the

7

indemnitor in Miami saying the appeal had gone on too long. and the surety needed more money. Effectively, he was claiming a renewal premium had to be paid, in violation of the terms of the bail bond agreement. Threats were implied. Foltz was in California, and Haas was in Florida. It took another year after oral argument to obtain an order on the interlocutory appeal.

22. On or about November 28th, 2016, Plaintiff Howard was objectively and lawfully at his mother's residence in Miami, Florida on Thanksgiving weekend when Bankers/BIG/BSSI's documents show Defendants claimed Howard was bailed out of jail in California, and that Plaintiffs had supposedly paid for that. On that date Foltz, through the power of attorney with Bankers/BIG/BSSI, decided Bankers/BIG would have no more liability for Howard's bail contract. Foltz was also doing this as employee/subagent of Holland and Holland, Inc.

23. On that same date and place, Foltz also decided Bankers/BIG would have no more liability for bail contracts belonging to other third parties, including William Carlen (for $ 1500 and $2500), also pending in that Superior Court of El Dorado County, California.

24. Defendants Bankers, BIG and BSSI, through their power of attorney with bail agent Foltz, misrepresented to the clerk of the court that it had been a busy Thanksgiving holiday, and that Howard and others were in jail. California law is very clear that there are only ten statutorily enumerated reasons[1] where the clerk of the court has authority to exonerate a bail bond. None applied to Howard. The clerk filed papers exonerating Bankers, BIG and BSSI of all liability on the bond based upon Foltz's representations, and mailed a copy to Foltz and Bankers.

25. On that same date and place, nor any future dates, neither Foltz nor Bankers/BIG/BSSI

---

[1]Cal. Penal Code §§§§§§§§ 997,1000.2,1001.27,1001.53, 1008, 1195, 1300, 1305, 1305.6,1117.

provided any Notice of Exoneration to Plaintiffs or their California attorney. This was nondisclosure of material information, even in the absence of any patently false statements.

**Defendants AIA, Allegheny, Fidelity, Foltz, Holland, and Holland, Inc.**

26. On that same date of November 28th, 2016, and place, Foltz, through his power of attorney with AIA, Allegheny, and Fidelity, placed a fraudulent bail bond and a forged contract with AIA, Allegheny, and Fidelity for multiple individuals, including Plaintiff Howard. The clerk mailed copies to Foltz and Allegheny. As to the premium, Foltz invested Howard's previously paid $ 200 premium from the Bankers/BIG/BSSI contract, added another $ 50 from previous instances of racketeering activity, and sent $ 250 to Allegheny for a bail premium on the fraudulent bail bond. Allegheny's computer system documented receiving $ 250 in premium from Howard on that date. Plaintiffs objectively did not
ever pay any premium other than the $ 200 required by the Bankers/BIG contract May 4, 2014.

27. When Foltz handed the clerk the new Power of Attorney on the fraudulent bail contract and invested the $ 200 proceeds from the wrongfully retained Bankers/BIG premium into the operation of the RICO enterprise, Foltz was investing racketeering proceeds to commit more racketeering acts, making Plaintiff Howard fund his own extortion.

28. On that same date and place, nor any future dates, neither Foltz nor AIA, Allegheny, or Fidelity provided any Notice of the fraudulent bail bond and forged contract to Plaintiffs or their California attorney. This was nondisclosure of material information, even in the absence of any patently false statements.

29. On that same date of November 28th, 2016, and place, Foltz also placed fraudulent bail contracts for other third parties, including for William Carlen (for $ 1500 and $2500) that were

9

pending in the Superior Court of El Dorado County, California with Defendants AIA, Allegheny, and Fidelity.

30. On Friday, April 14th, 2017 Foltz in California telephoned Haas in Florida, claiming that on February 21, 2017,  the judge had raised Howard's bail to $ 25,000, and Foltz was forced to pay that premium by the court, so Plaintiffs owed $ 2,500 on that new bail. Further, he claimed Plaintiffs owed the full amount on the old November 28, 2016 bail bond. Plus, the interest was accruing daily on those amounts, and every day that goes by, Plaintiffs would owe more. He communicated that all the legal problems would go away if they just paid the debts. Haas objected, and he became irate and threatened, "You're going to pay one way or another, bitch." During that same telephone call, at 2:08 P.M.(ET) Haas advised  Foltz she was in communication with various agencies, including the Department of Justice and the California U. S. Attorney's office about the irregularities of the court relating to the Howard matter.

31. Foltz in California continued to telephone Haas's law office in Florida dozens of times that weekend.

**AIA, Allegheny, Fidelity, Whalen, Foltz, Holland, Holland, Inc. and Yousef**

32. Approximately June, 2017, Foltz sought assistance from Holland and Holland, Inc. on the file. Holland/Holland, Inc. obtained names of possible individuals that could help from Defendants AIA, Allegheny, and Fidelity. Defendants AIA, Allegheny, and Fidelity participated and conspired to send enforcers to Plaintiffs' home/law office to take more aggressive measures under the guise of the fraudulent bail bond.

33. On or about June 26, 2017, using the list of names given by Defendants, Holland/Holland, Inc. contacted and retained the enforcer Yousef, to stalk and extort

10

Haas/Howard. Yousef agreed to take $ 350 for the job. Holland/Holland, Inc. furnished him with Defendants AIA, Allegheny, and Fidelity forms and documents. Yousef reported back July 7, 2017 and August, 10, 2017, that he had made multiple trips to the residence, and left two notes.

34. Approximately June, July, August and September, Yousef scoped out their residence and yard, trespassing in a private yard while openly heavily armed and wearing a ballistic vest displaying the word "Agent." His visits included shouting and banging on doors and windows. His costume and open carry of weapons alarmed Haas/Howard and neighbors. Yousef telephoned and left notes in Haas's mailbox with threats and demands, claiming if Haas pays the bail bond, then "he [Dominic] will no longer be wanted."

35. On or about November 13, 2017, in order to collect false debts on forged contracts, Yousef, armed and dressed in military garb, forced his way into Plaintiffs' home, destroying the lock, assaulted, battered, and threatened Haas down a hallway to her bedroom while aiming a Taser and then gun at her. The attack was unsuccessful, and Yousef fled.

36. On or about November 13, 2017, Yousef videoed this incident without consent and published it on the internet. Yousef displays the images of Haas in her home and bedroom in apparent advertising on the internet to promote his services, in total disregard of Plaintiff Haas's rights and privacy, and her personal rights in and to the use of her image and likeness.

37. Yousef also published on the internet multiple violent videos, including of himself armed and "sport tasing" unsuspecting victims.

38. Holland/Holland, Inc. subsequently emailed Yousef, telling him he still needed the job done, and offered to raise his fee to $ 750 on the fraudulent bail contract.

39. On or about February 14, 2018, Holland/Holland, Inc. emailed Defendant Whalen

saying Yousef's been doing a great job, but he needs more names.

40. On or about February 15, 2018, Whalen provided the name of Rolando Betencourt. Holland/Holland, Inc. was told to introduce himself saying that AIA and Ed Sheppard (another Vice-President) said he could help. Rolando Betencourt turned Holland/Holland, Inc. down.

41. On or about February 21, 2018 internal emails between executive Ed Sheppard and Defendant Whalen, show that Rolando Betencourt was unwilling to take the case, because there was no record of Howard's bail bond or warrant being listed in the necessary computer system.

42. On or about May 31st, 2018, following a State of Florida Department of Financial Services investigation, Yousef was arrested on four felonies of: a) Bail Bond Agent/No License/Appointment (Fla. Stat. § 648.30); b) Trespass/Structure, Conveyance/Dang. Weap. Firearm § 810.08(2)(c); c) Battery/On Person 65 or Older § 784.08(2)( c ); d) Assault/Aggravated/With a Firearm § 784.021(1)(a); all arising out of his specific conduct and actions of November 13, 2017.

43. On or about February 2, 2021, Defendant Yousef posted an over thirty-five minute video that has received thousands of views, again showing his version of the video taken November 13, 2017, and referring to Plaintiff Haas as an appellate attorney who was breaking the law, and Plaintiff Howard, and maligning them and their complaints about him. Yousef again displays the images in apparent advertising on the internet to promote his services, in total disregard of Plaintiff Haas's rights and privacy, and her personal rights in and to the use of her image and likeness.

44. Defendant Holland and Holland, Inc. a/k/a CHI is regularly or frequently employed by or associated with a court of law in respect to is exercise of criminal jurisdiction, or a public law

12

enforcement agency possessing the power of arrest and detention of persons suspected of violating the law. For a bail bondsman, this is a prohibited association, and grounds for revocation of his bail license per Cal. Code Regs. tit. 10, art. 2, § 2057 Prohibited Associations (2013). Florida has a similar prohibition at Fla. Stat § 648.44(2)(c),(f)(2004).

45. At all times material hereto, Bradley Laird Clark (Clark), was and is a California attorney, self-employed as Brad Clark, Attorney at Law, and was the attorney and registered agent for Holland and Holland, Inc., a/k/a CHI.

46. On or about February 21, 2017, records show that that Howard's bail had been risen to $25,000 by then Judge Steven C. Bailey, South Lake Tahoe Superior Court of California, County of El Dorado.

47. On or about May 7, 2018, the State of California agency responsible for overseeing state judges, The State of California Commission on Judicial Performance (CJP), publicly announced an inquiry for numerous charges of judicial misconduct against Judge Bailey.

48. On or about February 27, 2019, the California agency imposed the harshest penalties allowed by the California Constitution, namely, the CJP censured the former Judge, and barred him from ever seeking or holding judicial office with any court in the State of California.

49. In two weeks of public hearings, the CJP heard testimony on charges of judicial misconduct, including the judge funneling defendants to CHI, the private probation service provider where the judge's son works; failing to disclose that his son worked on paid commission for CHI and made reports to the court; ordering a defendant to pay restitution to CHI in violation of the law, based upon a letter from his son; failing to disclose that CHI's owner, Holland, was his friend and former client and attended strategy meetings for the judge's judicial

13

campaign; appointing attorney Clark as a special master in a matter pending before the judge without disclosing Clark was a personal friend; and receiving gifts and items of significant value from Clark.

***************************

### COUNT I – RICO § 1962 (c) – ALL DEFENDANTS – PATTERN OF RACKETEERING ACTIVITY

Plaintiffs re-allege and adopt ¶¶ 1- 49, and further state:

50. At all times relevant, Defendants Allegheny, Fidelity, AIA , Bankers, BIG, BSSI, Foltz, Holland, Holland, Inc., Whalen, and Yousef, a union and/or a group of individuals associated in fact, although not a legal entity, for the common purpose to illegally retain or extort bail premium. All acted in concert to make their cut of the premium or bond. It is a lawful purpose carried out through fraudulent means. The activities of the enterprise affect interstate and foreign commerce.

51. Culpable persons are Defendants AIA, Allegheny, Fidelity, Bankers, BIG, and BSSI, all legitimate businesses used for an improper purpose, and individuals such as Whalen with some part in directing the enterprise's affairs; Defendant Holland, Inc. operates through Holland, at the managerial or supervisory level with some part in directing the enterprise's affairs. Foltz also has some part in directing the enterprise's affairs. Yousef assists the enterprise.

52. All entities function as a continuing unit. The relationships among those associated with the enterprise has a hierarchical structure, flowing from Defendants AIA, Allegheny, Fidelity, Bankers, BIG, and BSSI at the top, to Foltz, Holland, and Holland, Inc., then to Yousef and other unnamed enforcers. At the top, Allegheny and Fidelity, Bankers, BIG and BSSI

underwrite the bail bonds, but rely on local bond agents with power of attorneys to secure clients. AIA closely monitors and controls Defendants Foltz, Holland, and Holland, Inc., who deal directly with Yousef and other unnamed enforcers. The individuals do not act independently and without coordination.

53. At all times relevant, in furtherance of the criminal enterprise, Defendants knowingly and purposely used: interstate wire in violation of 18 U.S.C. § 1343 and interstate mail in violation of 18 U.S.C. § 1341; committed extortionate credit transaction in violation of 18 USC § 891 and collection of extension of credit by extortionate means in violation of U.S.C. § 893, and interference with commerce by threats or violence in violation of 18 USCA § 1951; and tampering with a witness, victim, or an informant in violation of 18 USCA 1512(2). These constitute racketeering activity in violation of 18 U.S.C. § 1962 (c). Said violations occurred as a result of Defendants' use of mail and the telephone lines in connection with mailing, faxing and making telephone calls in connection with illegally retaining or extorting bail premiums through the use of fabricated documentation and non-existent contracts. The predicate acts are related both to each other (horizontal relatedness), and to the enterprise as a whole (vertical relatedness). The predicate acts are a regular way of conducting an ongoing legitimate business, and can be attributed to Defendants operating as part of a long-term association that exists for criminal purposes.

54. The Defendants have engaged in more than two acts of racketeering and therefore engaged in a pattern of racketeering activity as defined in 18 U.S.C. § 1961. Moreover, through the acts set forth herein, the Defendants conducted or participated in, directly or indirectly, the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning

of 18 U.S.C. § 1961(5).

55. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been, and continue to be, injured in their business and property, including, without limitation, the loss of hundreds of thousands of dollars, by reason of the violation of 18 U.S.C. § 1962(c) by Defendants.

WHEREFORE, Plaintiffs prays for judgment against each Defendant for:

a. Compensatory damages according to proof at trial, trebled according to statute, 18
   U.S.C. § 1964(c);

b. Prejudgment interest according to statute; and

c. Plaintiffs' reasonable attorneys' fees and costs according to statute, 18 U.S.C.
   § 1964(c).

d. Punitive damages; and

e. That the Court orders such other relief as it deems just and appropriate.

## COUNT II – RICO § 1962 (c) – COLLECTION OF UNLAWFUL DEBT

Plaintiffs re-allege and adopt ¶¶ 1- 49, and further state:

56. At all times relevant, Defendants Allegheny, Fidelity, AIA , Bankers, BIG, and BSSI, Foltz, Holland, Holland, Inc., Whalen, and Yousef, a union and/or a group of individuals associated in fact, although not a legal entity, for the common purpose to illegally retain or extort bail premium. All acted in concert to make their cut of the premium or bond. It is a lawful purpose carried out through fraudulent means. The association is open-ended and poses a threat of continuity. The activities of the enterprise affect interstate and foreign commerce.

57. Culpable persons are Defendants AIA, Allegheny, Fidelity, Bankers, BIG, and BSSI,

all legitimate businesses used for an improper purpose, and individuals such as Whalen with some part in directing the enterprise's affairs; Defendant Holland, Inc. operates through Holland, at the managerial or supervisory level with some part in directing the enterprise's affairs. Foltz also has some part in directing the enterprise's affairs. Yousef assists the enterprise.

58. All entities function as a continuing unit. The relationships among those associated with the enterprise has a hierarchical structure, flowing from Defendants AIA, Allegheny, Fidelity, Bankers, BIG, and BSSI at the top, to Foltz, Holland, and Holland, Inc., then to Yousef and other unnamed enforcers. At the top, Allegheny and Fidelity, and Bankers, BIG and BSSI underwrite the bail bonds, but rely on local bond agents with power of attorneys to secure clients. AIA closely monitors and controls the Defendants Foltz, Holland, and Holland, Inc., who deal directly with Yousef and other unnamed enforcers. The individuals do not act independently and without coordination.

59. Upon information and belief, in furtherance of the criminal enterprise, the Defendants knowingly and purposely engaged in the collection of unlawful debt. These acts constitute racketeering activity in violation of 18 U.S.C. § 1962 (c). Said violations occurred as a result of Defendants' use of mail and the telephone lines in connection with mailing, faxing and making telephone calls in connection with illegally retaining or extorting bail premiums through the use of fabricated documentation and non-existent contracts. The collection of unlawful debt is related both to each other (horizontal relatedness), and to the enterprise as a whole (vertical relatedness). The collection of unlawful debt is a regular way of conducting an ongoing legitimate business, and can be attributed to Defendants operating as part of a long-term association that exists for criminal purposes.

60. The Defendants have engaged in more than two acts of racketeering and therefore engaged in a pattern of racketeering activity as defined in 18 U.S.C. § 1961. Moreover, through the acts set forth herein, the Defendants conducted or participated in, directly or indirectly, the conduct of the enterprise's affairs through collection of "unlawful debt" within the meaning of 18 U.S.C. § 1961(6).

61. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been, and continue to be, injured in their business and property, including, without limitation, the loss of hundreds of thousands of dollars, by reason of the violation of 18 U.S.C. § 1962(c) by Defendants.

WHEREFORE, Plaintiffs prays for judgment against each Defendant for:

a. Compensatory damages according to proof at trial, trebled according to statute, 18 U.S.C. § 1964(c);

b. Prejudgment interest according to statute; and

c. Plaintiffs' reasonable attorneys' fees and costs according to statute, 18 U.S.C. § 1964(c).

d. Punitive damages; and

e. That the Court orders such other relief as it deems just and appropriate.

## COUNT III – RICO § 1962 (a) – INVESTMENT OF INCOME DERIVED FROM A PATTERN OF RACKETEERING ACTIVITY

Plaintiffs re-allege and adopt ¶¶ 1- 49, and further state:

62. At all times relevant, Defendants Allegheny, Fidelity, AIA , Bankers, BIG, BSSI, Foltz, Holland, Holland, Inc., Whalen, and Yousef, a union and/or a group of individuals

18

associated in fact, although not a legal entity, for the common purpose to illegally retain or extort

bail premium. All acted in concert to make their cut of the premium or bond. It is a lawful

purpose carried out through fraudulent means. The association is open-ended and poses a threat

of continuity. The activities of the enterprise affect interstate and foreign commerce.

63. Culpable persons are Defendants AIA, Allegheny, Fidelity, Bankers, BIG, and BSSI,

all legitimate businesses used for an improper purpose, and individuals such as Whalen with

some part in directing the enterprise's affairs; Defendant Holland, Inc. operates through Holland,

at the managerial or supervisory level with some part in directing the enterprise's affairs. Foltz

also has some part in directing the enterprise's affairs. Yousef assists the enterprise.

64. All entities function as a continuing unit. The relationships among those associated

with the enterprise has a hierarchical structure, flowing from Defendants AIA, Allegheny,

Fidelity, Bankers, BIG and BSSI at the top, to Foltz, Holland, and Holland, Inc., then to Yousef

and other unnamed enforcers. At the top, Allegheny and Fidelity, and Bankers, BIG and BSSI

underwrite the bail bonds, but rely on local bond agents with power of attorneys to secure clients.

AIA closely monitors and controls the Defendants Foltz, Holland, and Holland, Inc., who deal

directly with Yousef and other unnamed enforcers. The individuals do not act independently and

without coordination.

65. Defendants knowingly and purposely invested any income derived, directly or

indirectly, from a pattern of racketeering income back into the enterprise. These acts constitute

racketeering activity in violation of 18 U.S.C. § 1962 (a). Said violations occurred as a result of

Defendants' use of mail and the telephone lines in connection with mailing, faxing and making

telephone calls in connection with illegally retaining or extorting bail premiums through the use

of fabricated documentation and non-existent contracts. The predicate acts are related both to each other (horizontal relatedness), and to the enterprise as a whole (vertical relatedness). The predicate acts are a regular way of conducting an ongoing legitimate business, and can be attributed to Defendants operating as part of a long-term association that exists for criminal purposes.

66. The Defendants have engaged in more than two acts of racketeering and therefore engaged in a pattern of racketeering activity as defined in 18 U.S.C. § 1961. Moreover, through the acts set forth herein, the Defendants conducted or participated in, directly or indirectly, the conduct of the enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

67. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been, and continue to be, injured in their business and property, including, without limitation, the loss of hundreds of thousands of dollars, by reason of the violation of 18 U.S.C. § 1962(c) by Defendants.

WHEREFORE, Plaintiffs prays for judgment against each Defendant for:

a. Compensatory damages according to proof at trial, trebled according to statute, 18 U.S.C. § 1964(c);

b. Prejudgment interest according to statute; and

c. Plaintiffs' reasonable attorneys' fees and costs according to statute, 18 U.S.C. § 1964(c).

d. Punitive damages; and

e. That the Court orders such other relief as it deems just and appropriate.

## <u>COUNT IV – RICO § 1962 (a) – INVESTMENT OF INCOME DERIVED FROM COLLECTION OF UNLAWFUL DEBT</u>

Plaintiffs re-allege and adopt ¶¶ 1- 49, and further state:

68. At all times relevant, Defendants Allegheny, Fidelity, AIA , Bankers, BIG, and BSSI, Foltz, Holland, Holland, Inc., Whalen, and Yousef, a union and/or a group of individuals associated in fact, although not a legal entity, for the common purpose to illegally retain or extort bail premium. All acted in concert to make their cut of the premium or bond. It is a lawful purpose carried out through fraudulent means. The association is open-ended and poses a threat of continuity. The activities of the enterprise affect interstate and foreign commerce.

69. Culpable persons are Defendants AIA, Allegheny, Fidelity and Bankers, BIG, and BSSI, all legitimate businesses used for an improper purpose, and individuals such as Whalen with some part in directing the enterprise's affairs; Defendant Holland, Inc. operates through Holland, at the managerial or supervisory level with some part in directing the enterprise's affairs. Foltz also has some part in directing the enterprise's affairs. Yousef assists the enterprise.

70. All entities function as a continuing unit. The relationships among those associated with the enterprise has a hierarchical structure, flowing from Defendants AIA, Allegheny, Fidelity and Bankers, BIG, and BSSI at the top, to Foltz, Holland, and Holland, Inc., then to Yousef and other unnamed enforcers. At the top, Allegheny and Fidelity, and Bankers, BIG and BSSI underwrite the bail bonds, but rely on local bond agents with power of attorneys to secure clients. AIA closely monitors and controls Defendants Foltz, Holland, and Holland, Inc., who deal directly with Yousef and other unnamed enforcers. The individuals do not act independently and without coordination.

71. Upon information and belief, in furtherance of the criminal enterprise, the Defendants knowingly and purposely engaged in the collection of unlawful debt. These acts constitute racketeering activity in violation of 18 U.S.C. § 1962 (c). Said violations occurred as a result of Defendants' use of mail and the telephone lines in connection with mailing, faxing and making telephone calls in connection with illegally retaining or extorting bail premiums through the use of fabricated documentation and non-existent contracts. The collection of unlawful debt is related both to each other (horizontal relatedness), and to the enterprise as a whole (vertical relatedness). The collection of unlawful debt is a regular way of conducting an ongoing legitimate business, and can be attributed to Defendants operating as part of a long-term association that exists for criminal purposes.

72. Defendants knowingly and purposely invested any income derived, directly or indirectly, from a pattern of racketeering income back into the enterprise. These acts constitute racketeering activity in violation of 18 U.S.C. § 1962 (a). Said violations occurred as a result of Defendants' use of mail and the telephone lines in connection with mailing, faxing and making telephone calls in connection with illegally retaining or extorting bail premiums through the use of fabricated documentation and non-existent contracts.

73. The Defendants have engaged in more than two acts of racketeering and therefore engaged in a pattern of racketeering activity as defined in 18 U.S.C. § 1961. Moreover, through the acts set forth herein, the Defendants conducted or participated in, directly or indirectly, the conduct of the enterprise's affairs through collection of "unlawful debt" within the meaning of 18 U.S.C. § 1961(6).

74. As a direct and proximate result of Defendants' racketeering activities and violations

of 18 U.S.C. § 1962(c), Plaintiffs have been, and continue to be, injured in their business and property, including, without limitation, the loss of hundreds of thousands of dollars, by reason of the violation of 18 U.S.C. § 1962(c) by Defendants.

WHEREFORE, Plaintiffs prays for judgment against each Defendant for:

a. Compensatory damages according to proof at trial, trebled according to statute, 18 U.S.C. § 1964(c);

b. Prejudgment interest according to statute; and

c. Plaintiffs' reasonable attorneys' fees and costs according to statute, 18 U.S.C. § 1964(c).

d. Punitive damages; and

e. That the Court orders such other relief as it deems just and appropriate.

### COUNT V – RICO § 1962(d) – ALL DEFENDANTS – CONSPIRACY TO VIOLATE PROVISIONS OF RICO § 1962 (a) and/or (c)

Plaintiffs re-allege and adopt ¶¶ 1- 49, and further state:

75. At all times relevant, Defendants Allegheny, Fidelity, AIA , Bankers, BIG, and BSSI, Foltz, Holland, Holland, Inc., Whalen, and Yousef, a union and/or a group of individuals associated in fact, although not a legal entity, for the common purpose to illegally retain or extort bail premium. All acted in concert to make their cut of the premium or bond. It is a lawful purpose carried out through fraudulent means. The association is open-ended and poses a threat of continuity. The activities of the enterprise affect interstate and foreign commerce.

76. Culpable persons are Defendants AIA, Allegheny, Fidelity and Bankers, BIG, and BSSI, all legitimate businesses used for an improper purpose, and individuals such as Whalen

23

with some part in directing the enterprise's affairs; Defendant Holland, Inc. operates through

Holland, at the managerial or supervisory level with some part in directing the enterprise's

affairs. Foltz also has some part in directing the enterprise's affairs. Yousef assists the enterprise.

77. All entities function as a continuing unit. The relationships among those associated

with the enterprise has a hierarchical structure, flowing from Defendants AIA, Allegheny,

Fidelity and Bankers, BIG, and BSSI at the top, to Foltz, Holland, and Holland, Inc., then to

Yousef and other unnamed enforcers. At the top, Allegheny and Fidelity, and Bankers, BIG, and

BSSI underwrite the bail bonds, but rely on local bond agents with power of attorneys to secure

clients. AIA closely monitors and controls the Defendants Foltz, Holland, and Holland, Inc., who

deal directly with Yousef and other unnamed enforcers. The individuals do not act independently

and without coordination.

78. Upon information and belief, in furtherance of the criminal enterprise, the Defendants

knowingly and purposely agreed to participate in an endeavor, that, if completed, would

constitute a RICO violation. Each Defendant adopted the goal of furthering or facilitating the

conspiracy. Agreement to the pattern of predicate acts and collection of unlawful debt is related

both to each other (horizontal relatedness), and to the enterprise as a whole (vertical relatedness).

Agreement to the pattern of predicate acts and collection of unlawful debt is a regular way of

conducting an ongoing legitimate business, and can be attributed to Defendants operating as part

of a long-term association that exists for criminal purposes.

79. Two or more members of the conspiracy agreed to commit a substantive RICO

offense, and the named Defendants knew of and agreed to the overall objective of the RICO

offense.

80. A member of the conspiracy committed an overt act that constituted a predicate act of racketeering to further the conspiracy.

81. Moreover, through the acts set forth herein, the Defendants conducted or participated in, directly or indirectly, the conduct of the enterprise's affairs through a "pattern of racketeering activity" or through collection of "unlawful debt" within the meaning of 18 U.S.C. § 1961(5), (6).

82. As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiffs have been, and continue to be, injured in their business and property, including, without limitation, the loss of hundreds of thousands of dollars, by reason of the violation of 18 U.S.C. § 1962(c) by Defendants.

WHEREFORE, Plaintiffs prays for judgment against each Defendant for:

a. Compensatory damages according to proof at trial, trebled according to statute, 18 U.S.C. § 1964(c);

b. Prejudgment interest according to statute; and

c. Plaintiffs' reasonable attorneys' fees and costs according to statute, 18 U.S.C. § 1964(c).

d. Punitive damages; and

e. That the Court orders such other relief as it deems just and appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury of all issues triable as a right by jury

Dated this 13th day of November, 2021.

By: */s/ Karen J. Haas, Esq.*
KAREN J. Haas, ESQ.
Plaintiff, *Pro Se* and Counsel for Howard
LAW OFFICES OF KAREN J. Haas
13805 S.W. 83rd Court
Miami, Florida 33158-1027
TEL: (305) 255-4833
FAX: (305) 255-4834
E-MAIL: KJHLaw@gmail.com

# SURETY BAIL BOND INDEMNITY AGREEMENT

## Bankers Insurance Company

The undersigned, called "First Party," make application to _South Shore Bail Bonds_ called

"Second Party," for the execution by Bankers Insurance Company, a corporation called "Surety" of a Bail undertaking herein referred to

as "Bail Bond" in the penal amount of $ _2500_ for _Howard Dominie_ called "Principal," and in consideration of Second Party arranging for execution of continuance of this Bail Bond, First Party does jointly and severally agree as follows:

FIRST: To pay Second Party $ _250_ for this Bail Bond. The premium is fully earned upon the release of Principal. The fact that Defendant may have been improperly arrested, or his bail reduced or his case dismissed, shall not obligate the return of any portion of said premium.

SECOND: To reimburse Second Party and Surety for actual expenses incurred by Second Party or Surety in connection with the arranging and/or execution of Bail Bond or substitution thereof whether or not said Principal refuses to be released after arrangements have been initiated by Second Party, in accordance with the regulations of the Insurance Commissioner in effect at the time such expenses are incurred.

THIRD: To reimburse Second Party and Surety for actual expenses incurred and caused by a breach by the Principal of any of the terms for which the application and Bail Bond were written not in excess of the penal amount of the Bail Bond including all expenses or liabilities incurred as a result of searching for, recapturing or returning Principal to custody, incurred by Second Party or Surety or as necessary in apprehending or endeavoring to apprehend Principal, including legal fees incurred by Second Party or Surety in making application to a court for an order to vacate or to set aside the order of forfeiture or Summary judgment entered thereon. However, no expenses or liabilities incurred for recapturing or returning Principal to custody shall be chargeable after the entry of Summary Judgment.

FOURTH: To pay the Second Party or Surety, in the event that it is necessary for them to institute suit for a breach of this agreement, a reasonable attorney's fee which shall, in no event, be less than sum of twenty-five dollars ($25.00).

FIFTH: To pay Second Party or Surety as collateral upon demand, the penal amount of Bail Bond whenever Second Party or Surety, as a result of information concealed or misrepresented by the First Party or Principal or other reasonable cause, anyone of which was material to hazard assumed, deems payment necessary to protect the Second Party or Surety hereunder. Where, as a result of judicial action, bail has been increased, and no collateral or insufficient collateral, in the sale discretion of Second Party or Surety, is furnished to indemnify against such increase in the bail, Second Party or Surety may demand such collateral as will indemnify them against such increased bail.

SIXTH: To pay Second Party or Surety immediately upon demand after entry of Summary Judgment, pursuant to California Penal Code, Section 1306.

SEVENTH: To aid Second Party or Surety in securing release or exoneration of Second Party or Surety from all liability under Bail Bond, including the surrender of Principal to Court should Second Party or Surety deem such action advisable.

EIGHTH: That all money or other property which the First Party has deposited or may deposit with the Second Party or the Surety may be applied as collateral security or indemnity for matters contained herein, and to accomplish the purposes contained herein, the Second Party and/or Surety is authorized to lawfully levy upon said collateral in the manner provided by law and to apply the proceeds therefrom and any and all money deposited to payment or reimbursement for the herein above liabilities, losses, costs, damages and expenses. If collateral received by Second Party is in excess of the bail forfeited, such excess shall be returned to the depositor immediately upon the application of the collateral to the forfeiture, subject to any claim of Second Party and Surety for unpaid Premium or the hereinabove charges.

NINTH: Second Party or Surety shall not surrender Principal to custody prior to the time specified in the Bail Bond for the appearance of the Principal, or prior to any occasion when the presence of the Principal in Court is lawfully required, without returning all premium paid therefore, unless as a result of judicial action, information concealed or misrepresented by the Principal, or other reasonable cause, anyone of which was material to the hazard assumed, the hazard was substantially increased and the additional premium, if any, for such increased hazard was not paid within a reasonable time.

TENTH: The obligations hereunder are joint and several and any amounts due shall bear interest at the maximum rate of interest allowed by law. The Second Party and the Surety shall not be first obliged to proceed against the Principal on Bail Bond before having recourse against the First Party or anyone of them. The First Party hereby expressly waiving the benefits of law requiring the Second Party or the Surety to make claim upon or to proceed or enforce its remedies against the Principal before making demand upon or proceeding and/or enforcing its remedies against anyone or more of the First Party.

ELEVENTH: In making application for Bail Bond, each of us warrants all statements made by him or her on this application to be true, and we agree to advise Second Party or Surety of any change, including but not limited to change of address or employment of either the Principal of any of the First Party, or any other material change in circumstances, within forty-eight (48) hours after knowledge such change shall have occurred, and the First Party agrees that any failure to so notify shall be reasonable cause for the immediate surrender of the Principal.

TWELFTH: The undersigned agree that these obligations apply to all other Bail Bonds executed for the same charge for which the above mentioned Bail Bond was executed, or any charge arising out of the same transaction, regardless of whether said Bail Bonds are filed before or after conviction, but not in a greater amount.

Language Translation Disclosure: The official version of this document is the English text version. If any questions arise related to the accuracy of the information contained in the Spanish translation, please refer to the English text version which is the official version.

## Disclosure

IN WITNESS WHEREOF, the First Party whose names are subscribed to the Surety Bail Bond Indemnity Agreement executed herewith each represents. I have read the Surety Bail Bond Indemnity Agreement and I know the contents thereof; that I hereby acknowledge receipt of a copy of said Surety Bail Bond Indemnity Agreement, that I am the true and lawful owner of the property, whether real or personal, which if set forth in the Application for Bail (which Application is made a part hereof by reference as though herein fully set forth) is my property and that I own such property free and clear of all liens or encumbrances except as so noted, and I further promise not to transfer or encumber any of said property until my liability on said Surety Bail Bond Indemnity Agreement has been released. I understand the Second Party and/or Surety is permitting the said bail to remain in force upon reliance of the statements made by me and I do hereby

this _4_ day of _May_ _2014_ set my hand.

| | | |
|---|---|---|
| Defendant Signature _Dominic Hong_ | Home Phone _____ | Work Phone _____ |
| Name _____ Address _____ | City _____ | Zip _____ |
| Employer _____ Address _____ | City _____ | Zip _____ |
| DMV I.D. _____ S.S. No _____ | Date of Birth _____ | |

| | | |
|---|---|---|
| Indemnitor Signature _____ | Home Phone _____ | Work Phone _____ |
| Name _____ Address _____ | City _____ | Zip _____ |
| Employer _____ Address _____ | City _____ | Zip _____ |
| DMV I.D. _____ S.S. No _____ | Date of Birth _____ | |

| | | |
|---|---|---|
| Indemnitor Signature _____ | Home Phone _____ | Work Phone _____ |
| Name _____ Address _____ | City _____ | Zip _____ |
| Employer _____ Address _____ | City _____ | Zip _____ |
| DMV I.D. _____ S.S. No _____ | Date of Birth _____ | |

BIC0420350810
FOLTZ.00006

## Ex. A

## SURETY BAIL BOND INDEMNITY AGREEMENT
### Bankers Insurance Company

The undersigned, called 'First Party; make application to _____ called 'Second Party,' for the execution by Bankers Insurance Company, a corporation called "Surety" of a Bail undertaking herein referred to as "Bail Bond" in the penal amount of $ _____ for _____ called 'Principal,' and in consideration of Second Party arranging for execution of continuance of this Bail Bond, First Party does jointly and severally agree as follows:

FIRST: To pay Second Party $for this Bail Bond. The premium is fully earned upon the release of Principal. The fact that Defendant may have been improperly arrested, or his bail reduced or his case dismissed, shall not obligate the return of any portion of said premium.

SECOND: To reimburse Second Party and Surety for actual expenses incurred by Second Party or Surety in connection with the arranging and/or execution of Bail Bond or substitution thereof whether or not said Principal refuses to be released after arrangements have been initiated by Second Party, in accordance with the regulations of the Insurance Commissioner in effect at the time such expenses are Incurred.

THIRD: To reimburse Second Party and Surety for actual expenses incurred and caused by a breach by the Principal of any of the terms for which the application and Bail Bond were written not in excess of the penal amount of the Bail Bond including all expenses or liabilities incurred as a result of searching for, recapturing or returning Principal to custody, incurred by Second Party or Surety or as necessary in apprehending or endeavoring to apprehend Principal, including legal fees incurred by Second Party or Surety in making application to a court for an order to vacate or to set aside the order of forfeiture or Summary judgment entered thereon. However, no expenses or liabilities incurred for recapturing or returning Principal to custody shall be chargeable after the entry of Summary Judgment.

FOURTH: To pay the Second Party or Surety, in the event that it is necessary for them to institute suit for a breach of this agreement, a reasonable attorney's fee which shall, in no event, be less than sum of twenty-five dollars ($25.00).

FIFTH. To pay Second Party or Surety as collateral upon demand, the penal amount of Bail Bond whenever Second Party or Surety, as a result of information concealed or misrepresented by the First Party or Principal or other reasonable cause, anyone of which was material to hazard assumed, deems payment necessary to protect the Second Party or Surety hereunder. Where, as a result of judicial action, bail has been increased, and no collateral or insufficient collateral, in the sale discretion of Second Party or Surety, is furnished to indemnify against such increase in the bail, Second Party or Surety may demand such collateral as will indemnify them against such increased bail.

SIXTH: To pay Second Party or Surety immediately upon demand after entry of Summary Judgment, pursuant to California Penal Code, Section 1306.

SEVENTH: To aid Second Party or Surety in securing release or exoneration of Second Party or Surety from all liability under Bail Bond, including the surrender of Principal to Court should Second Party or Surety deem such action advisable.

EIGHTH: That all money or other property which the First Party has deposited or may deposit with the Second Party or the Surety may be applied as collateral security or indemnity for matters contained herein, and to accomplish the purposes contained herein, the Second Party and/or Surety is authorized to lawfully levy upon said collateral in the manner provided by law and to apply the proceeds therefrom and any and all money deposited to payment or reimbursement for the herein above liabilities, losses, costs, damages and expenses. If collateral received by Second Party is in excess of the bail forfeited, such excess shall be returned to the depositor immediately upon the application of the collateral to the forfeiture, subject to any claim of Second Party and Surety for unpaid Premium or the hereinabove charges.

NINTH: Second Party or Surety shall not surrender Principal to custody prior to the time specified in the Bail Bond for the appearance of the Principal, or prior to any occasion when the presence of the Principal in Court is lawfully required, without returning all premium paid therefore, unless as a result of judicial action, information concealed or misrepresented by the Principal, or other reasonable cause, anyone of which was material to the hazard assumed, the hazard was substantially increased and the additional premium, if any, for such increased hazard was not paid within a reasonable time.

TENTH: The obligations hereunder are joint and several and any amounts due shall bear interest at the maximum rate of interest allowed by law. The Second Party and the Surety shall not be first obliged to proceed against the Principal on Bail Bond before having recourse against the First Party or anyone of them. The First Party hereby expressly waiving the benefits of law requiring the Second Party or the Surety to make claim upon or to proceed or enforce its remedies against the Principal before making demand upon or proceeding and/or enforcing its remedies against anyone or more of the First Party.

ELEVENTH: In making application for Bail Bond, each of us warrants all statements made by him or her on this application to be true, and we agree to advise Second Party or Surety of any change, including but not limited to change of address or employment of either the Principal of any of the First Party, or any other material change in circumstances, within forty-eight (48) hours after knowledge such change shall have occurred, and the First Party agrees that any failure to so notify shall be reasonable cause for the immediate surrender of the Principal.

TWELFTH: The undersigned agree that these obligations apply to all other Bail Bonds executed for the same charge for which the above mentioned Bail Bond was executed, or any charge arising out of the same transaction, regardless of whether said Bail Bonds are filed before or after conviction, but not in a greater amount.

IN WITNESS WHEREOF, the First Party whose names are subscribed to the Surety Bail Bond Indemnity Agreement executed herewith each represents. I have read the Surety Bail Bond Indemnity Agreement and I know the contents thereof; that I hereby acknowledge receipt of a copy of said Surety Bail Bond Indemnity Agreement, that I am the true and lawful owner of the property, whether real or personal, which if set forth in the Application for Bail (which Application is made a part hereof by reference as though herein fully set forth) is my property and that I own such property free and clear of all liens or encumbrances except as so noted, and I further promise not to transfer or encumber any of said property until my liability on said Surety Bail Bond Indemnity Agreement has been released. I understand the Second Party and/or Surety is permitting the said bail to remain in force upon reliance of the statements made by me and I do hereby

this _____ day of _____, _____ set my hand.

**Defendant**
Signature _____ Home Phone _____ Work Phone _____
Name _____ Address _____ City _____ Zip _____
Employer _____ Address _____ City _____ Zip _____
DMV I.D. _____ S.S. No. _____ Date of Birth _____

**Indemnitor**
Signature _____ Home Phone _____ Work Phone (305) 255-4833
Name Karen J. H. _____ Address _____ City _____ Zip _____
Employer _____ Address _____ City _____ Zip _____
DMV I.D. _____ S.S. No. _____ Date of Birth _____

**Indemnitor**
Signature _____ Home Phone _____ Work Phone _____
Name _____ Address _____ City _____ Zip _____
Employer _____ Address _____ City _____ Zip _____
DMV I.D. _____ S.S. No. _____ Date of Birth _____

BIC0420350810

| | | |
|---|---|---|
| **COMPANY** | **INTERNATIONAL FIDELITY INSURANCE COMPANY**<br><br>**ALLEGHENY CASUALTY COMPANY**<br>P.O. BOX 9810, CALABASAS, CA  91372-9810<br>TELEPHONE (800) 935-2245 | **PRODUCER** — PRODUCER NAME, ADDRESS, PHONE AND PRODUCER LICENSE NUMBER MUST BE PREPRINTED OR STAMPED HERE: |

**BAIL BOND AGREEMENT ("Agreement") -** <span style="color:red">THIS IS A DOUBLE SIDED DOCUMENT; READ ALL SIDES CAREFULLY</span>

In consideration of INTERNATIONAL FIDELITY INSURANCE COMPANY/ALLEGHENY CASUALTY COMPANY, as applicable, ("Surety"), through that Surety's duly appointed independent bail producer ("Bail Producer") (Surety and Bail Producer are sometimes together referred to as "Surety"), issuing, or causing to be issued, a criminal appearance bail bond described as:

Date _____   Defendant _____

Indemnitor(s) _____   Total Premium $ _____

Power Number(s) _____   Total Bond Amount $ _____   ("Bond")

<span style="color:red">I/we represent and warrant that I/we have read, approve and agree to all of the terms and conditions found on following pages (front and back).</span>

Signed, sealed and delivered this _____.

| Defendant | | Indemnitor | |
|---|---|---|---|
| Sign | _____ | Sign | _____ |
| Print | _____ | Print | _____ |
| Indemnitor | | Indemnitor | |
| Sign | _____ | Sign | _____ |
| Print | _____ | Print | _____ |
| Indemnitor | | Indemnitor | |
| Sign | _____ | Sign | _____ |
| Print | _____ | Print | _____ |

**Statement of Information Required by Section 2100, California Regulatory Code, and Which May Be Required in Other States**

| FULL NAME OF PERSON SUPPLYING INFORMATION | NAME OF PERSON NEGOTIATING BAIL | NAME OF PERSON RECEIVING INFORMATION |
|---|---|---|
| ADDRESS (STREET, CITY, STATE, ZIP) | ADDRESS (STREET, CITY, STATE, ZIP) | DATE AND TIME INFORMATION RECEIVED |
| CONNECTION OR RELATIONSHIP TO DEFENDANT | CONNECTION OR RELATIONSHIP TO DEFENDANT | MANNER IN WHICH INFORMATION RECEIVED |
| IF SAME WAS DEFENDANT, HOW DID HE COMMUNICATE? | NAME OF LICENSEE WHO NEGOTIATED TRANSACTION | NAME OF OTHER AGENTS INVOLVED & COMMISSION PAID |
| IF WRIT, NAME OF ATTORNEY | NAME AND SUM PAID UNLICENSED PERSONS AND SERVICES PERFORMED | |

Was consideration other than money received?   ☐ Yes  ☐ No   If yes, explain in detail and attach statement

**Translation Request - Solicitud de traducción.** ☐ **Check box and complete the following if translation is required**

Si no puede leer ni entender Inglés, favor de marcar este cuadro. (If you cannot read or understand English, please check this box.) The undersigned translator makes this affidavit and hereby certifies, under penalty of perjury, that he/she read verbatim and translated this entire document, including the reverse side, and all related bond application documents including disclosures, promissory notes, security instruments and trust deeds, to the Indemnitor signing below in his/her primary language.

Translator (signature) _____   (print name) _____

Translator's Address _____   Date _____
<span style="font-size:smaller">Street                        City            State        Zip</span>

Confirmo por mi colocación de mis iniciales que las dos caras de este acuerdo han sido traducidos completamente a mi satisfacción. (I confirm by my affixing my initials that this contract has been translated to my satisfaction)

INDEMNITOR Initials _____   <span style="color:red">READ ALL TERMS AND CONDITIONS ON THE FRONT AND BACK OF EACH PAGE</span>

Form# AIA.CA.0307 (09/14)      Page 1 of 4   

**Terms And Conditions**

You, the undersigned (referred to herein as "Indemnitor," "Defendant," or together as "you," as applicable), agree to be bound to the following terms and conditions:

1. The premium for the Bond is fully earned upon Defendant's release from custody. The premium is not refundable except as stated herein.The fact that Defendant may have been improperly arrested, the bail was reduced or Defendant's case was dismissed shall not obligate the return of any portion of the premium.

2. Defendant agrees to appear in any Court required in connection with the Bond at the times stated in the Bond and all other times as may be ordered by the Court. Indemnitor will have Defendant appear in any Court as required in connection with the Bond.

3. Surety shall have control and jurisdiction over the Defendant during the term for which the Bond is in effect and shall have the right to apprehend, arrest and surrender the Defendant to the proper officials at any time as provided by law. In the event Defendant's surrender is made prior to Defendant's failure to appear in court, and for a reason other than as stated in paragraph 4, then you may be entitled to a refund of the bond premium if required by applicable law (if any) and as stated in the Supplemental Terms and Conditions.

4. Unless otherwise provided by applicable law (if any) and as stated in the Supplemental Terms and Conditions, the following events shall constitute a breach of your obligations to the Surety, and the Surety shall have the right to immediately apprehend, arrest and surrender Defendant, and you shall have no right to any refund of premium whatsoever: (a) Defendant departs the jurisdiction of the Court without the prior written consent of the Court and the Surety; (b) Defendant moves from his/her current address without prior written consent of the Surety, or Defendant fails to notify Surety of change in address; (c) Defendant commits any act that constitutes reasonable evidence of Defendant's intention to cause a forfeiture of the Bond; (d) Defendant is arrested and incarcerated for any other offense (other than a minor traffic violation); (e) Defendant or Indemnitor makes any materially false statement in the any application submitted to Surety for the bond, including the Bail Bond Application and Indemnitor Application ("Applications"); (f) Defendant or Indemnitor makes any materially false statement in the Applications; (g) Defendant's bail is increased; (h) Indemnitor requests that Defendant be surrendered; (i) there is a material increase in the risk assumed by the Surety (as determined by the Surety in its sole and absolute discretion) including, by way of example, but not limited to, depreciation or impairment of any real or personal property deposited as security for the Bond ("Collateral," as defined herein).

5. In the event Defendant's apprehension and surrender is required for any reason, including Defendant's failure to appear at any of Defendant's required Court proceedings or hearings, Defendant understands, acknowledges, assumes and accepts that Defendant's failure to appear and resulting apprehension to custody is an activity that poses a peculiar risk of harm both to the Defendant and to others, including any recovery agent(s), which is beyond and differs from the risks to which members of the public are commonly and generally subjected. Defendant acknowledges and agrees that if Defendant becomes subject to such apprehension and surrender, Defendant is voluntarily participating in the activity of apprehension and recovery such that the risk of harm of such activity is not peculiar to Defendant. Defendant acknowledges and understands the peculiar risk of such activity and Defendant is no longer a member of the general public who cannot anticipate such risk. Defendant knowingly accepts and assumes the subsequent risk of harm to Defendant and others arising out of such apprehension and surrender activities. Defendant agrees to defend, indemnify, and hold harmless the Surety and/or Bail Producer (including all agents, representatives and employees thereof) for any injuries, harm, losses, claims, lawsuits, damages, losses, liability, demands, actions, fees and expenses (including attorneys fees and costs) arising out of such activities.

6. You shall indemnify the Surety and keep the Surety indemnified and hold it harmless from and against any and all claims, lawsuits, damages, losses, liability, demands, actions, fees and expenses (including attorneys fees and costs) (together, "Liabilities"), relating to, or arising out of, Surety's issuance or procurement of the Bond, including, but not limited to, the following: (a) any fugitive recovery fee if there is a forfeiture of the Bond (which fee is typically ten percent [10%], of the amount of the Bond for an in-state recovery), plus any out of pocket expenses, (c) any and all extradition costs that may be incurred to apprehend and return Defendant to custody, and (d) if a collection action is required under this Agreement, reasonable and actual attorneys fees plus any and other costs, expenses and/or assessments that may be incurred as a result thereof and of any forfeiture of the Bond subject to applicable law (if any) as stated in the Supplemental Terms and Conditions below. The voucher, check or other evidence of any payment made by Surety shall be conclusive evidence of such payment in any action against you both as to the propriety of such payment and as to the extent of your liability to Surety for such payment. Further, you will, upon demand, place with Surety the requisite funds to meet any such Liabilities, whether that demand is made before or after Surety has paid or advanced such funds.

7. Subject to applicable law (if any), and as stated in the Supplemental Terms and Conditions, any real or personal property deposited as security, including cash, for the Bond and this Agreement ("Collateral") is held for the payment of any and all monies and sums due to Surety, including all Liabilities, sustained, made or incurred by Surety on account of, arising out of or relating to the Bond, this Agreement, and the transactions contemplated thereby (including all the items referenced in paragraph 6, above). Your failure to comply with any of terms and conditions of this Agreement, and any and all debt or other obligations arising out of or evidenced by any agreement executed by you or any other indemnitor for the benefit of Surety, may result in the following: If you grant the Surety a lien or a security interest in any Collateral to secure the obligations contained in this Agreement, including without limitation the Liabilities, and if you do not perform such obligations, you authorize the Surety to (a) hold, apply or sell any Collateral, or any part thereof to reimburse the Surety for any and all Liabilities of any kind or nature and to protect or reimburse the Surety by reason of the execution at any time of the Bond or any other bond for or on behalf of Defendant, and (b) hold, apply or sell the Collateral for the purpose of placing the Surety in cash funds to protect the Surety against Liabilities, including any claim, demand, loss or liability under the Bond or any other bond executed on Defendant's behalf. Subject to applicable law (if any), and as stated in the Supplemental Terms and Conditions, the Surety may make any such sale, at its discretion, at public or private sales, and without demand, notice or advertisement of the time and place of said sale, and also with the right to purchase said Collateral at such sale or sales, freed and discharged from any equity or redemption, except as otherwise provided by applicable law.

8. The Surety shall not be liable for the depreciation of any Collateral or for any interest thereon. In the event of depreciation of the Collateral, or any part thereof, or of any Collateral which may be hereafter deposited with the Surety, upon request of the Surety, you shall provide the Surety with additional and satisfactory Collateral so that the total market value of the Collateral shall, at all times, be equal to the market value of the Collateral at the time of its initial deposit. Subject to applicable law (if any), and as stated in the Supplemental Terms and Conditions, if you fail to deposit such additional Collateral, the Surety shall have the full right, power and authority, without further demand or notice, to sell, assign and deliver the whole or any part of such Collateral, including any substituted or additional Collateral, at public or private sale, at its option, and without demand, notice or advertisement, and also with the right to purchase said Collateral at any such sale, freed and discharged from any equity or redemption as provided by applicable law.



**Terms And Conditions** *(Continued from Page 2)*

9. If a confession of judgment is taken in connection with security for the Bond, the Surety shall have the right to enter, record and file the judgment at any time, and such judgment shall be a lien and entitled to a preference against any of your property, whether or not the Surety is entitled to be indemnified at the time of the entry, recording or filing of such judgment. If such judgment is entered, recorded or filed by the Surety against you, the judgment entered shall be effective and available to the Surety against you not only in connection with the Bond and this Agreement but also in connection with any other bond that may have been written by the Surety in which you are either the indemnitor or a defendant.

10. You acknowledge and agree that the Surety may foreclose any or all of the liens and security interests arising out of the transactions relating to the Bond or this Agreement, or exercise any of its rights or remedies under this Agreement, or take any combination of such actions, without waiving any other right or remedy. Failure to exercise any rights or remedies of the Surety at any one time shall not constitute a waiver of the right to exercise them at any other time. Any security or Collateral you give may be substituted, subordinated, or released by the Surety without affecting any other rights. The Surety shall not be obligated to enforce its rights against any security, Collateral or indemnitor prior to enforcing its rights against you or any other indemnitor.

11. Subject to applicable law (if any), and as stated in the Supplemental Terms and Conditions, the Surety will return the Collateral to you when all of the following are satisfied: (a) the Surety receives competent written legal evidence satisfactory to the Surety (for example, written notice from the Court) of the Surety's discharge or release from all liability under the Bond; (b) there are no outstanding Liabilities of any kind arising out of or relating to the Bond or this Agreement; (c) there are no other outstanding bonds or obligations executed by, for or on behalf of the Defendant in connection with which the Surety may deem it advisable to retain such Collateral for its protection; and (d) upon the Surety's request, you shall have executed and delivered to the Surety a general release upon the Surety's return of the Collateral to you. If the Surety deems it necessary to make any outlay to protect any Collateral or security in its possession, whether for real or personal property, you authorize the Surety to do so, and you agree to indemnify and reimburse the Surety for any such outlay as in the judgment of the Surety may be necessary to protect its Collateral or security, including payment of taxes or liens or mortgages and any attorneys fees, costs and service fees for time spent and/or special services rendered.

12. The Surety shall have the right to transfer and/or assign, in whole or in part, its rights and obligations in this Agreement, and/or in the Bond, to the Bail Producer or any other person or entity ("Assignee") without notice to or consent from you. Subject to any limitations imposed upon Assignee by the Surety, Assignee shall have the right to enforce in any suit, foreclosure, action, proceeding or otherwise any of the Surety's rights herein or arising out of any of the transactions contemplated hereby, and you shall not, and expressly waive any right to, assert the claim or defense that Assignee does not have the right to enforce such rights in any such action, proceeding or otherwise. If more than one bond is made or has been made for the Defendant, then this Agreement shall extend to and cover all those bonds and the terms of this Agreement shall apply to each bond individually or as a group.

13. You hereby acknowledge and agree that neither the Surety nor Bail Producer has recommended or suggested any specific attorney or firm of attorneys to represent the Defendant in any capacity.

14. This Agreement may not be terminated or modified orally. Any modification and termination of this Agreement, including any release of liability hereunder, must be in writing and signed by the Surety and you.

15. To the maximum extent permitted by applicable law, you hereby waive any and all rights you may have under federal law (including, but not limited to, Title 28, Privacy Act-Freedom of Information Act and Title 6, Fair Credit Reporting Act) and any local or state law relating to Surety obtaining, and you consent to and authorize Surety to obtain, any and all private or public information and/or records concerning you from any party or agency, private or governmental (local, state or federal), including, but not limited to, credit reports, Social Security Records, criminal records, civil records, driving records, tax records, telephone records, medical records, school records, worker compensation records, and employment records. You further authorize, without reservation, any party or agency, private or governmental (local, state or federal) contacted by Surety to furnish to Surety or Bail Producer, in accordance with applicable law, any and all private and public information and records in their possession concerning you to the Surety and direct that a copy of this document shall serve as evidence of said authorization. You irrevocably grant to Surety and Bail Producer, and their agents and representatives, the right to enter your residence, or any other property that you own or occupy, without notice, at any time, for the purpose of locating, arresting, and returning the Defendant to custody, and subject to applicable law, you waive and release any and all causes of action in connection therewith including, without limitation, torts of trespass and false imprisonment.

16. Defendant agrees that Surety may attach a location tracking device on any vehicle owned or driven by Defendant, at any time, without notice, and monitor the location of the vehicle through any available technology. Defendant further agrees that Surety may use location technologies to locate Defendant's wireless device at any time during the period of the Bond is in force and any applicable Bond remission period, and the Bond is conditioned upon your full compliance with the following terms and conditions: (a) Surety, at its discretion, will use network-based location technologies to find Defendant or the Indemnitor; (b) this is the only notice you will receive for the collection of your location information; (c) Surety will retain location data only while the Bond is in force and during any applicable Bond remission period; (d) Surety will disclose location information only to the Courts as required by Court Order; (e) Surety and Bail Producer, including their agents and representatives, will be the only persons with access to your location information; (f) YOU WILL NOT HAVE THE OPTION TO OPT-OUT OF LOCATION USE OR TRACKING DURING THE PERIOD THE BOND IS IN FORCE AND ANY APPLICABLE BOND REMISSION PERIOD; and (g) all questions relating to location capability should be directed to Surety.

17. If you leave the state in which the Bond was issued, subject to applicable law, Defendant waives any rights to oppose extradition proceedings and consents to the application of such force as may be necessary to return Defendant to Surety and the Court where the Bond was posted.

18. In the event any provision herein shall be deemed to exceed any applicable state or federal law, then such provision shall automatically be deemed to have been revised to comply with such law so as to provide Surety with the maximum protection from any loss or Liabilities. The invalidity or unenforceability of any provision herein (or portion thereof) shall in no way effect the validity or enforceability of any other provision (or portion thereof) of this Agreement. Surety may assign any of its rights herein or arising out of any of the transactions contemplated hereby to any party including, without limitation, any Assignee without notice to or consent from you. Subject to any limitations imposed upon Assignee by Surety, Assignee shall have the right to enforce in any action or proceeding



**Terms And Conditions** *(Continued from page 3)*

any of Surety's rights herein or arising out of any of the transactions contemplated hereby, and you shall not, and expressly waives any right to, assert the claim or defense that Assignee does not have the right to enforce such rights in any such action or proceeding.

19. This Agreement and all documents that are executed in connection with this Agreement set forth all the terms of the agreement between the Surety and you. All statements, representations, promises, agreements, and affirmations made by the Surety or Bail Producer, or any representative, employee or agent, thereof prior to or contemporaneously with the execution of this Agreement are contained within this document, and unless they are specifically set forth in this Agreement, are of no force or effect whatsoever in determining the rights and Liabilities of the Surety and you. You further agree to execute and be bound by any other future documents necessary to carry out and effectuate this Agreement.

**Supplemental Terms And Conditions**

IMPORTANT NOTICE! IF THE BOND WILL BE SECURED BY REAL PROPERTY YOU OWN OR IN WHICH YOU HAVE AN INTEREST, PLEASE SEE THE CALIFORNIA DISCLOSURE OF LIEN AGAINST REAL PROPERTY PROVIDED HEREWITH.

1. Defendant understands and acknowledge that if Defendant is surrendered to custody prior to the time specified in the Bond, you have the right under California Penal Code §1300(b) to petition the Court for a ruling as to return of premium. If the Court determines that good cause does not exist for Defendant's surrender, and Defendant has neither failed to appear nor violated any Court order, the Court may, in its discretion, order the return of all or a portion of the premium.

2. The specific expenses for which you are required to indemnify Surety and Bail Producer in accordance with the Agreement are:

a. Actual, necessary and reasonable expenses incurred in connection with the bail transaction including, but not limited to: (1) guard fees after the first 12 hours following Defendant's release on bail; (2) notary fees, recording fees, necessary long distance telephone expenses (i.e., telephone calls billed by the telephone company as "long distance," but not those for which "message unit" charges only are made); (3) telegram charges, travel expenses and verification of Collateral outside of the county where the bail was arranged; (4) a reasonable posting fee charged by a Bail Producer operating in a county other than that where the bail was arranged (provided that no charge shall be made for travel from the Bail Producer's office to post bail in an area where the Bail Producer advertises in the yellow pages of the telephone directory unless the advertisement specifically provides for this charge). Such travel charges, when permitted, may not exceed the amount allowed to be taken as a travel expense for income tax purposes under the federal Internal Revenue Code and related regulations or the amount allowed by the State of California to be claimed for mileage by its employees, whichever the Bail Producer chooses;

b. actual, reasonable and necessary expenses incurred and caused by your breach of any of the terms of this Agreement and any other written agreement under which the Bond was written. This reimbursement may not exceed the penal amount of the Bond and may include a reasonable charge for the services of the Bail Producer and its employees, partners or other persons associated with the Bail Producer in the transaction of the Bond on your behalf; and

c. if a forfeiture of bail occurs and is not set aside, any expenses provided herein that are incurred within 180 days following the forfeiture (in addition to the amount of the forfeiture) or such additional period(s) as ordered by the Court.

3. Any Collateral received shall be returned to the person whose name appears as the "Depositor" on the Collateral Receipt or that person's assignee (which assignee may not be the Bail Producer or its representative, employee or agent) as soon as you are advised that the obligation, the satisfaction of which was secured by the Collateral, is fully discharged. Surety or Bail Producer shall determine promptly whether the obligation has been discharged upon the request for return of the Collateral by the Depositor of the Collateral or the Depositor's assignee. If the Collateral was deposited to secure the obligation of the Bond, the Collateral shall be returned immediately upon the entry of any Order by an authorized official stating that the liability under the Bond is terminated. If Surety or Bail Producer having custody of the Collateral fail to take promptly any action necessary to secure the termination of such liability, the Collateral shall be returned immediately upon the accrual of any right to secure an order of termination of liability. If the Collateral was deposited as security for unpaid premium or charges, and if such premium or charges remained unpaid at the time of discharge/exoneration and after demand for payment has been made by Surety or Bail Producer, the Collateral (other than cash) may be levied upon in the manner provided by law, and the proceeds of the Collateral may be applied to the amount of the unpaid premium or charges.

4. If Collateral received is in excess of the bail forfeited, such excess shall be returned to the person whose name appears as Depositor on the Collateral Receipt after the application of the collateral to the forfeiture and all amounts owed to Surety.

5. The waivers set forth in Paragraphs 6, 12, and 15 are deleted to the extent required by 10 CCR 2087.

6. Paragraph 15 of the Agreement is deleted and replaced with the following: You hereby authorize Surety to conduct or obtain any and all private or public information and/or records concerning you from any party or agency, private or governmental (local, state or federal), including, but not limited to, credit reports, Social Security Records, criminal records, civil records, driving records, tax records, telephone records, medical records, school records, worker compensation records, and employment records. You further authorize, without reservation, any party or agency, private or governmental (local, state, federal), contacted by Surety to furnish in accordance with applicable law any and all private and public information and records in their possession concerning you to the Surety and direct that a copy of this document shall serve as evidence of said authorization. You irrevocably grant to Surety and its designees the right to enter your residence, or any other property that you own or occupy, without notice, at any time, for the purpose of locating, arresting, and returning Defendant to custody.

7. The final sentence of Paragraph 18 of the Agreement is deleted and replace with the following: Subject to any limitations imposed upon Assignee by Surety, Assignee shall have the right to enforce in any action or proceeding any of Surety's rights herein or arising out of any of the transactions contemplated hereby.

8. Except as expressly provided in this Supplement, all terms and conditions of the Agreement remain in full force and effect. In the event of a conflict between the terms and conditions of the Agreement and this Supplement, this Supplement shall control.

A I A

EMPOWERING AGENTS

**Ex. B**

ACC0067

# BAIL BOND AGREEMENT

WHEREAS, the undersigned, hereinafter called the First Party, whether one or more, have made or do now make application to _____ hereinafter called the Second Party, to have executed or secure the execution by the (fill in company name) _____, a corporation, hereinafter called the Surety, of a Bail Bond in the penal sum of $ _____ on behalf of _____ hereinafter called the Defendant, and

WHEREAS, upon and with the express understanding and condition that this agreement would be executed by the First Parties, the Second Party has heretofore arranged for the execution of said Bail Bond or does hereby agree to arrange for the execution of the same.

NOW, THEREFORE, in consideration of the Second Party arranging for the execution of the Bail Bond aforementioned, or in the event that said Bail Bond shall already have been executed and the Defendant released from custody thereon, then and for and in consideration of the Second Party causing the Surety to permit the Defendant to remain for the time being free from the custody of the Court under said Bail Bond, the First Party and each of them do hereby jointly and severally agree and promise as follows:

## FIRST

TO PAY TO THE SECOND PARTY THE SUM OF $ _____ as premium for and upon the execution of said Bail Bond and a like sum annually in advance each year hereafter until the Surety shall be legally discharged from all liability thereunder, and to pay to the Second Party for extraordinary services, if any.

The said premium shall be regarded as fully earned immediately upon the filing of said Bail Bond, and the fact that the Defendant may have been improperly taken into custody or his Bail reduced, or his cause dismissed forthwith shall not obligate the Second Party to waive or return said premium or any portion thereof.

## SECOND

To indemnify and to at all times save harmless the Second Party or the Surety from and against any and all liability, demands, expenses, attorney's fees, debts, damages, judgments, or losses of every kind, character or nature that the Second Party or the Surety shall or may at any time or for any cause sustain, incur or be put to sustain by reason of the execution or the arranging or obtaining the execution of the bail bond aforementioned or any renewal thereof or any bond issued in continuance thereof or as a substitute therefor; to pay to the Second Party or the Surety immediately upon demand the penal amount of said bail bond whenever the Second Party or the Surety deems such payment necessary for protection, upon any change of condition which increases the hazard, which sum shall be retained and used by the Second Party or the Surety as security hereunder, TO PAY TO THE SECOND PARTY OR THE SURETY IMMEDIATELY UPON THE DECLARATION OF FORFEITURE OF SAID BAIL BOND THE PENAL AMOUNT THEREOF.

## THIRD

To aid and cooperate with the Second Party or the Surety in securing the release or exoneration of the Second Party or the Surety from any and all liability under said bail bond, including the surrender of the Defendant to the custody of the Court should the Second Party or the Surety in its sole discretion deem such action necessary or advisable, and even though such surrender may have been made before the bail bond has been forfeited or any liability incurred thereon by the Second Party or the Surety and no obligation shall exist on the part of the Second Party or the Surety to return or waive the premium or any portion thereof, except as may be otherwise required by law or the rules of the Insurance Commissioner.

## FOURTH

To reimburse the Second Party or the Surety, in an amount not to exceed the penal amount of the bail bond, for any and all expenses or liabilities incurred in searching for, recapturing or returning the Defendant to the custody of the Court, including salaries of employees during the time spent apprehending or endeavoring to apprehend the Defendant, expenses for private detectives, rewards, traveling expenses, telegrams, telephone calls, automobile expenses, railroad or air fares, meals and any and all other expenses or liabilities incurred by the Second Party or the Surety as necessary or incidental in apprehending or in endeavoring to apprehend the Defendant, including also liability for attorney's fees incurred by the Second Party or the Surety in making application to the Court for an order to vacate or set aside the order of forfeiture or the judgment entered thereon and even though such expenses may have been incurred before any order had been made forfeiting said bail bond or even though such expenses may have been incurred after the time for the setting aside of the forfeiture declared upon the said bail bond shall have expired; that an itemized statement of such expenses sworn to by the Second Party or any officer or attorney-in-fact of the Surety shall be accepted as prime facie evidence of the fact and extent of such expenses in any and all suits hereunder. All money owing to the Second Party, pursuant to this Agreement, that is in arrears for a period of 30 days, shall accrue monthly at the highest legal rate of interest. Additionally, First Party hereby authorizes Second Party to conduct a credit check and other financial inquiries on First Party.

## FIFTH

This agreement shall apply to any and all other bail bonds executed for the Defendant on the same charge for which the above mentioned bail bond was executed or any other charge connected therewith or arising out of the same general transaction or circumstances regardless of whether said bail bond or bonds are filed before or after conviction or on appeal, but not in a greater amount.

## SIXTH

That any and all money or other property which the undersigned or any of them have paid or deposited or may pay or deposit with the Second Party or the Surety, or which is or may at any time be in the hands of the Second Party or the Surety belonging to the undersigned, may be held by the Second Party or the Surety as collateral or at the option of the Second Party or the Surety may be applied as collateral security or indemnity for the matters contained herein or any of them. But nothing herein shall be a waiver by the depositor of any money or property or by any guarantor of any right or rights he may have or shall hereafter acquire in connection therewith as against the Surety.

## SEVENTH

To pay the Second Party or the Surety attorney's fees in the event of suit hereunder for breach of this agreement incurred by the Second Party or the Surety under this indemnity agreement.

## EIGHTH

In making application for the hereinabove described bail bond we warrant all of the statements made on the reverse of this page to be true and we agree to advise the Second Party or the Surety or its agent of any change (especially change of address) within 48 hours after such change has occurred and agree that any failure to so notify shall be cause for the immediate surrender of the Defendant.

IN WITNESS WHEREOF THE UNDERSIGNED DO HEREBY ACKNOWLEDGE RECEIPT OF THE FOREGOING AGREEMENT AND VERILY STATE THAT THEY AND EACH OF THEM HAVE CAREFULLY READ THE SAME AND UNDERSTAND THE CONTENTS THEREOF and do now set

their hand this _____ day of _____

_____  Address _____

_____  Address _____

_____  Address _____

_____  Address _____

_____  Address _____

_____  Address _____

## PLEASE READ CAREFULLY AND TAKE COPY

Form #4477-4/98

**Ex. C**

ACC0092